**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0188n.06

**Case No. 17-6206**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RICHARD PADGETT, | ) | |
| | ) | **FILED**<br>Apr 10, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| WAL-MART STORES EAST, LIMITED | ) | DISTRICT OF KENTUCKY |
| PARTNERSHIP, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | O P I N I O N |

BEFORE:    COLE, Chief Judge; GUY and DONALD, Circuit Judges.

COLE, Chief Judge.  A routine visit to Walmart by Richard Padgett prematurely ended after he fell in a restroom and fractured his kneecap.  It took surgery and rehabilitation to mend his injuries.  Padgett brought a slip-and-fall claim against Walmart, but the district court granted summary judgment in favor of Walmart, reasoning that Padgett had failed to create a factual dispute about whether there was a foreign substance on the floor that caused him to fall.  We agree with the district court, and we affirm.

## I. BACKGROUND

When Padgett, then 66-years old, took the bus from his assisted-living community to Walmart on a sunny day in May 2015, his shopping list was not long: he wanted soda and groceries, plus he just liked to browse for things on sale.  After the bus dropped him off, Padgett

used his walker to assist him as he proceeded inside. Once in the store, he put his walker in storage, got into an electronic shopping cart, and drove his cart to the restroom. Padgett parked his cart outside the restroom, and then went inside to use one of the stalls.

This is where Padgett's day took a turn. On his way out of the stall, he walked a few feet forward and then fell face first into the bathroom floor. The fall was painful: Walmart personnel had to call EMS, and Padgett was taken away on a stretcher. Padgett would later learn that he had fractured his kneecap, requiring surgery and months of rehabilitation.

Padgett found the restroom clean and at no point, before or after his fall, observed any foreign substances on the floor. He nevertheless filed a slip-and-fall suit against Walmart in Kentucky state court, arguing that there was liquid on the floor which caused his fall. To corroborate this theory, he pointed to a stain that he observed on his outside pant leg, though he only observed the stain well after the fall, after EMS had arrived on the scene and placed him on a stretcher.

Walmart removed the case to federal court and, following discovery, moved for summary judgment in its favor. The district court granted summary judgment, reasoning that Padgett had failed to introduce any evidence that there was liquid on the floor or that it was the cause of his fall. It concluded that no reasonable jury could find in favor of Padgett, because a jury would have to engage in "mental gymnastics" to draw the inferences that Padgett asked, even when construing the record in the light most favorable to him.

Padgett now appeals.

## II. ANALYSIS

The summary judgment standard is familiar, so our recitation of it will be brief: the issue for us is whether there is any genuine dispute as to some material fact. The material facts here

go to Padgett's burden of proof. Under Kentucky's burden-shifting approach to slip-and-fall claims, he has the burden of proving in the first instance "that there was a foreign substance/object on the floor and that such was a substantial factor in causing his accident and injury." *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 435 (Ky. 2003) (citation omitted).

Padgett has failed to create a genuine factual dispute because he does not offer any evidence that there was a foreign substance on the floor. Instead, Padgett offers only his speculation that he slipped on a foreign substance, rather than that he simply lost his footing. But as we have explained, "[c]onclusory allegations, speculation, and unsubstantiated assertions are not evidence" and do not create genuine issues of fact. *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 583 (6th Cir. 2016) (citation omitted).

Consider the two key pieces of evidence that Padgett offers for proof of a foreign substance on the floor. Padgett's leading argument is his deposition testimony that "his feet were taken out from under him 'due to something damp on the floor.'" Appellant Br. 7 (quoting Padgett Dep., R. 24-3, PageID 189.) We agree with Padgett that a statement that there is "something damp on the floor" could create a factual dispute. But it does not in this case because we evaluate Padgett's testimony in context, and context makes clear that Padgett did not observe a foreign substance and instead was speculating as to the cause of the fall. He testified:

> Q.   Do you know, one way or the other, Mr. Padgett, what caused your fall?
> A.   There was something damp on the floor.
> Q.   How do you know that?
> A.   Well, it took my legs out from under me, and – I had a stain on my pants. . . .
> Q.   At any point, when you were in the restroom, did you actually see any type of liquid on the floor?
> A.   No.

(Padgett Dep., R. 24-3, PageID 189.) Indeed, at no point did Padgett testify that he observed

"any type of liquid on the floor." To the contrary, he described the restroom as "clean" and testified multiple times that he neither saw nor felt a foreign substance on the floor. No reasonable jury could view this testimony as establishing that there was a foreign substance on the floor.

That brings us to Padgett's next piece of evidence: a wet spot on his pants. Padgett offers this wet spot, which he first observed when he was put on a stretcher, as evidence that there was liquid on the floor of the bathroom that he slipped on. But this too is speculation. Might the spot have instead come from liquid spilled on Padgett by EMS personnel or have existed before Padgett's fall? Yes. But to attribute the spot to one of these other sources would be just as speculative as what Padgett argues here.

To be sure, Padgett could have created a genuine factual dispute if it were reasonable to infer that the spot on his pants came from the floor, but any inference here would be unreasonable. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). Padgett did not observe any liquid on the floor, which already cuts against inferring that the spot on his pants came from the floor. And since Padgett did not observe the spot on his pants until later—after EMS had arrived on the scene and placed him in a stretcher—we cannot infer from temporal proximity that the spot came from the floor. That means that Padgett's testimony that the dampness on his pants "came from the floor" is also no more than speculation. (Padgett Dep., R. 24-3, PageID 194.) And there is still yet another inference that we would have to draw, which is not just that there was liquid on the floor, but that this liquid was also a substantial factor in causing Padgett's fall.

What Padgett observed (or, to be more accurate, did not observe) distinguishes this case from *Vaughn v. Target Corp.*, No. 3:13-CV-521-H, 2014 WL 4999194 (W.D. Ky. Oct. 7, 2014).

In *Vaughn*, a plaintiff sued Target following a slip and fall where "she saw and felt" a sticky "substance on both the floor and her shoe." *Id.* at *1. She corroborated her personal observations—what "she saw and felt"—with physical evidence: a pair of shoes "with a dark substance on the sole of the left shoe." *Id.* By contrast, the testimony that Padgett offers here is pretty much *Vaughn* backwards. Rather than use physical evidence to corroborate his personal observations, Padgett instead infers from physical evidence (a spot on his pants) something he did not observe (liquid on the floor). What Padgett needs to defeat summary judgment is an observation (or reasonable inference) that there is liquid on the floor, and that is where his case falls short.

We can make quick work of Padgett's other arguments.

First, that Padgett fell does not create a factual dispute about the presence of a foreign substance. A fall is something that can—indeed, often does—happen in the absence of another's negligence. And we cannot infer from a fall that there was a foreign substance on the floor because such an inference would eviscerate the first element of Kentucky's burden-shifting framework, which requires the plaintiff to prove the existence of a foreign substance. *See Lanier*, 99 S.W.3d at 435. The inference that Padgett asks us to draw would put the burden on the defendant to disprove the existence of a foreign substance, instead of requiring a plaintiff to prove a substance existed. Perhaps that is why one Kentucky court has explained that "the mere fact of a slip is not sufficient to prove the existence of a [foreign substance]." *Edwards v. Capitol Cinemas, Inc.*, 2003 WL 23008792, at *1 (Ky. Ct. App. Dec. 24, 2003).

Second, and related, Padgett argues that because the fall was classified as "mechanical"—which he defines as unrelated to medical causes—we should infer that the slip was caused by a foreign substance. Even if this is what "mechanical" means, we cannot draw

that inference either. That the fall was mechanical says nothing about whether the fall might have resulted from Padgett losing his balance, tripping, or any other non-medical cause.

Finally, expert testimony that Padgett's injuries "were consistent with injuries received in a slip and fall on [a] wet floor" does not create a genuine factual dispute. Appellant Br. 7. As that expert himself acknowledged, he "cannot" testify as to the cause of the fall because he "was not there." McEldowney Dep., R. 47-1, PageID 538–39. His understanding about the cause of the fall is "only" that Padgett "stated that he hit some water and he fell." *Id.* PageID 539. But we have already explained that Padgett's speculation as to the cause of the fall does not create a genuine factual dispute.

Though we have analyzed Padgett's testimony piece by piece, we consider his evidence cumulatively and draw all reasonable inferences in his favor. *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). Even under this forgiving standard, no reasonable jury could infer that there was a foreign substance on the Walmart floor or that it was the cause of Padgett's fall, so the district court correctly granted summary judgment in Walmart's favor. Because we do not consider any of the other evidence relied upon by the district court in granting summary judgment in favor of Walmart, we do not address Padgett's argument that the district court relied on inadmissible evidence.

### III. CONCLUSION

We affirm the judgment below.